**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

GREG STANALAJCZO,

                  Plaintiff,

v.                                         Case No. 21-cv-12422

CLYDE ESBRI, et al,

                  Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANT ESBRI'S MOTION FOR
JUDGMENT ON THE PLEADINGS AND FOR SUMMARY JUDGMENT AND
DISMISSING STATE LAW CLAIMS**

This case foremost concerns a First Amendment retaliation claim under 42

U.S.C. § 1983 made by Plaintiff Greg Stanalajczo against Defendant Michael Fournier,

Mayor of Royal Oak, and Defendant Clyde Esbri, Chairman of the Royal Oak Zoning

Board of Appeals, as well as a related _Monell_ liability claim against Defendant City of

Royal Oak.[1] (ECF No. 1.) More specifically, Plaintiff contends that, due to his

engagement in certain political and legal activities, Defendants conspired to punish him

by "crashing" a private meeting of concerned Royal Oak residents at which he was an

attendee, recording the same, and later manipulating the video content to smear his

reputation. (Id. at PageID.14.) Pending before the court is Defendant Esbri's "Motion for

Judgment on the Pleadings & for Summary Judgment." (ECF No. 29.) The motion has

been fully briefed. A hearing is unnecessary. _See_ E.D. Mich. LR 7.1(f)(2). For reasons

explained below, the court will grant Defendant Esbri's motion with respect to the First

_____

[1] Plaintiff also makes state law claims of assault and battery, intentional infliction of
emotional distress, and civil conspiracy. (ECF No. 1, PageID.15–18.)

Amendment retaliation claim. Additionally, rather than consider Plaintiff's state law claims, the court will instead decline to exercise its supplemental jurisdiction, dismissing them without prejudice.

## I. BACKGROUND[2]

Plaintiff is a resident of Royal Oak. (ECF No. 1, PageID.2.) Defendants Fournier and Esbri each hold positions within Royal Oak's local government: Defendant Fournier is the Mayor of Royal Oak and Defendant Esbri is the Chairman of the Royal Oak Zoning Board of Appeals. (Id.) Since Defendant Fournier's election to office in 2016, Plaintiff has been vociferously opposed to multiple actions taken by the mayoral office and Royal Oak City Commission with two standing out in particular. (Id. at PageID.3–8.)

The first concerned the alleged "gifting" of property in Royal Oak, namely the Williams Street Municipal Parking Lot, to a developer. (ECF No. 1, PageID.3–4.) Plaintiff believed that the loss of this lot to a developer would negatively impact the Royal Oak Farmers Market by causing customer and vendor parking issues. (Id. at PageID.4.) To prevent the land transfer, Plaintiff "co-initiated a grass-roots community awareness initiative to Save [sic] the RO Farmers Market from future disruption to its operations." (Id.) Identified as "Sullivan Investment Group Limited Partnership" and "Third Street Properties, Inc," he further filed suit against Royal Oak in July of 2017. Ultimately, the suit was dismissed in November of 2017 for lack of standing, a decision upheld by both the Michigan Court of Appeals in July of 2018 and the Michigan Supreme Court in May of 2019. (Id.) Nonetheless, Plaintiff "spoke out regularly and strongly against this gift to

---

[2] Given that Defendant Esbri brings his motion in part under Federal Rule of Civil Procedure 12(c), the facts presented are taken from Plaintiff's complaint. For purposes of deciding this motion, all well-pleaded factual allegations are accepted as true.

the City Center developer and other issues raised in the complaint such as [a] plethora of No Bid contracts to political donors, including speaking repeatedly at City Commission meetings, other public venues and to the media." (Id.)

The second action concerned the decision to relocate the Royal Oak Veterans War Memorial. (ECF No. 1, PageID.5–8.) Plaintiff was especially motivated to oppose the relocation because he would visit the memorial, just a short walk from his office, with a now-deceased veteran family member. (Id. at PageID.5.) And he was apparently not alone in his position. "Veterans groups, grass-roots citizens collations and residents were again formed, motivated, inspired and/or mobilized to prevent Royal Oak from moving this monument, viewed by many as the equivalent of a sacred gravesite." (Id. at PageID.6.) Plaintiff specifically assisted in efforts to gather signatures to place the issue of relocating the monument on the November 2021 ballot. (Id.) However, "[o]n the very first day (on or about March 23, 2021) of the organized volunteer movement to gather signatures at the Royal Oak Farmers Market, their protected conduct to support the Veterans Memorial received retaliation by the Mayor and his supermajority's re-election campaign petition circulators." (Id.) This "retaliation" allegedly included an assault and verbal harassment of an elderly military veteran and woman who previously ran for city commission in 2018, as well as the displacement of one signature-gathering location that Plaintiff secured allegedly due to intimidation of the onsite location manager. (Id. at 6–7.) Regardless, in May of 2021, a list of signatures was submitted to the city clerk for placement of the relocation issue on the ballot. (Id. at PageID.7.)

Thereafter, a discrepancy arose as to the legal sufficiency of the signatures. (ECF No. 1, PageID.7.) Litigation ensued. (Id.) While not a plaintiff to the action for a

writ of mandamus, Plaintiff asserts that "his efforts assisting in the organization of volunteers and gathering signatures gave the plaintiffs the standing to file suit." (Id. at PageID.7–8.) At both the trial and appellate court levels, the Michigan courts ordered that the relocation issue be placed on the November 2021 ballot for voter consideration. (Id. at PageID.8.) On August 4, 2021, the Royal Oak City Commission held a special meeting to comply with the courts' rulings. (Id.) Just three days later, the event giving rise to this lawsuit occurred, portions of which were recorded. (Id. at PageID.8–9, 12.)

On August 7, 2021, Plaintiff attended a Royal Oakers for Accountability & Responsibility ("ROAR") meeting at the Royal Oak Detroit Elks Lodge #34. (ECF No. 1, PageID.9.) Plaintiff firmly maintains that "[t]his was a private meeting on a private property, only open to ROAR members and pre-registered or invited guests; city officials of any kind including Mayor Fournier and Chairman Esbri were NOT welcome, were NOT invited, were NOT pre-registered, and had no reason to believe they were invited." (Id. at PageID.8.) The group was set to "discuss[] a number of topics including what they perceived to be corrupt actions by Defendant Mayor Fournier and his supermajority." (Id. at PageID.10.) When Plaintiff arrived for the meeting, he observed Defendants Fournier and Esbri in the Elks Lodge parking lot. Plaintiff then "rolled down his window and advised them they were not welcome, were not ROAR members, and were not welcome at a private meeting for ROAR members." (Id.) After walking into the ROAR meeting, Plaintiff alerted those setting up to Defendants Fournier and Esbri's presence onsite. (Id. at PageID.11.)

Undeterred, Defendants Fournier and Esbri approached the entrance door to the ROAR meeting. (ECF No. 1, PageID.11.) They reportedly became "irate" and "more

aggressive" upon being told that they would not be permitted to attend by ROAR member Erika Sykes. (Id.) From inside the building, Plaintiff "observed the Mayor and Esbri engaging in what he perceived to be bullying tactics and engaging in a heated discussion with Erika Sykes at the door." (Id.) Believing the situation to be escalating, Plaintiff "stepped through the doorway between Ms. Sykes and the group to protect her, to explain to the defendants that they were not welcome in the private meeting, and to let other ROAR members gain entry through the commotion, since the meeting was about to start." (Id.) Then, the following transpired:

> As Stanalajczo was observing the exchange between Ms. Sykes and the Mayor, he felt a slight nudge on his right side as Esbri invaded his personal space. Stanalajczo spread his right leg out slightly and lifted his right forearm to create space between himself and Esbri, as the Mayor's rant continued. Stanalajczo was suddenly struck as Esbri left his feet, violently slamming Stanalajczo into the door jam and the wall. Stanalajczo was instantly dazed and had to gather himself and catch his breath. As he gathered himself, Esbri immediately started yelling about Stanalajczo touching him even though Stanalajczo had not recovered from Esbri's attack. The hostile commotion continued as Stanalajczo walked into the Elks to escape further injury while Fournier and Esbri continued to bully Ms. Sykes still attempting to illegally gain entry.

(Id. at PageID.11–12.) Plaintiff asserts that he "suffered serious injuries because of this attack, some of which have required surgical repair, long term rehabilitation treatment, and possible additional invasive and/or surgical procedures." (Id. at PageID.13.)

Plaintiff contends that both Defendants were acting in their official capacities at the time of the alleged assault because Defendant Fournier "publicly stated that he was acting in his official capacity as Mayor, and brought his ZBA Chairman with him." (Id.) Plaintiff further contends that:

> Mayor Fournier and Chairman Esbri conspired to crash that meeting, make a scene, and verbally attack those present, all while video/audio recording in order to intimidate attendees including Stanalajczo by using

> edited and selected portions of this video, audio and images on social
> media to specifically create a false narrative supporting their wrongful
> actions and to harass meeting attendees, including Mr. Stanalajczo, in
> retaliation for their protected conduct . . . In other words, the defendants
> conspired to punish the plaintiff for constitutionally protected conduct.

(Id. at PageID.9.) Without providing further details, Plaintiff also asserts that, "[t]o top

things off, Fournier and Esbri then hired a private investigator, referred to them by a

well-known attorney in Royal Oak, specifically to try dig up dirt on Mr. Stanalajczo and

others working with Mr. Stanalajczo." (Id. at PageID.13.)

Roughly two months later, on October 13, 2021, Plaintiff filed the instant lawsuit.

He asserts five claims: Count I, "Violation of Civil Rights Under 42 U.S.C. § 1983 (First

Amendment – Retaliation for Protected Conduct)," against all Defendants; Count II,

"Violation of MI State Law (Assault and Battery)," against Defendant Esbri; Count III,

"Violation of MI State Law (Intentional Infliction of Emotional Distress)," against

Defendants Esbri and Fournier; Count IV, "Violation of MI State Law (Civil Conspiracy),"

against Defendants Esbri and Fournier; and Count V, "*Monell* Liability Against Royal

Oak." (*See* ECF No. 1.) As it relates to Count I, Plaintiff cites the following as

constitutionally protected conduct:

> a. Being a plaintiff in an action against Fournier and Royal Oak in which
> he attempted, through court action, to prevent Royal Oak from gifting a
> multi-million-dollar property to a developer and political contributor;
>
> b. Being an outspoken critic of Fournier and Royal Oak's decision to gift a
> multi-million-dollar property same favored developer, including speaking
> out against it during the public comment portion of City Commission
> meetings;
>
> [c.] Coordinating locations and gathering petition signatures to prevent
> Fournier and Royal Oak from unilaterally and without voter input, move the
> veterans war memorial; [and]

> d. Working with the plaintiffs in a lawsuit to successfully prevent Fournier and Royal Oak from unilaterally moving a war memorial monument without first having it put on the ballot for the voters to decide[.]

(Id. at PageID.13–14.) He argues that, as direct retaliation for the aforementioned, "Defendant Fournier and Esbri conspired to punish Mr. Stanalajczo by crashing the August 7, 2021 ROAR meeting that they knew Mr. Stanalajczo's would be attending with video cameras on, specifically to create content to manipulate and then publish, specifically to smear and slander Mr. Stanalajczo and others at the meeting." (Id. at PageID.14.) Without elaborating, Plaintiff states that "[t]here was a causal connection between the plaintiff's herein-described constitutionally protected conduct and the defendants' herein-described adverse action." (Id.) As a result, Plaintiff claims the following suffered harm: the publishing of only a portion of the video taken on August 7, 2021 to smear and slander him; bodily injury from Defendant Esbri's alleged assault; and the post-incident hiring of a private investigator by Defendant Fournier to dig up dirt on Plaintiff. (Id. at PageID.14–15.)

## II. STANDARD

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true." *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted). "A Rule 12(c) motion 'is granted when no material issue of fact exists and the party making the

motion is entitled to judgment as a matter of law.'" *Id.* at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

The Sixth Circuit set forth the pleading requirements necessary to survive a Rule 12(c) motion in *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295–96 (6th Cir. 2008), explaining:

> In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 1964–65 (internal citations omitted). In *Erickson v. Pardus,* 550 U.S. ——, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), decided two weeks after *Twombly,* however, the Supreme Court affirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Id.* at 2200 (quoting *Twombly,* 127 S.Ct. at 1964). The opinion in *Erickson* reiterated that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id.* (citing *Twombly,* 127 S.Ct. at 1965). We read the *Twombly* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12.

A court evaluating Rule 12(c) motion must therefore follow the Supreme Court's changes to the pleading standards enunciated in *Twombly* as well as now *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Bates*, 958 F.3d at 480 (citing *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017)). Thus, while a court must accept all well-pleaded fact allegations as true, it need not accept legal conclusions. *Id.* (citing *Iqbal*, 556 U.S. at 678). And well-pleaded factual allegations must plausibly give rise to an entitlement to relief, that is, they must "allow[ ] the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint must therefore provide sufficient facts to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Boland v. Holder*, 682 F.3d 531, 534 (6th Cir. 2012) (emphasis removed) (citing *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In such a review, the court may not go beyond the pleadings, but can consider items attached to the pleadings and documents sufficiently incorporated by reference. *See Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 296–97 (6th Cir. 2008).

### III. DISCUSSION

### A. Motion for Judgment on the Pleadings

Though Defendant Esbri moves for both judgment on the pleadings and for summary judgment (*see* ECF No. 29), the court is foremost concerned with his arguments for judgment on the pleadings as they pertain to Count I, Plaintiff's claim for First Amendment retaliation under 42 U.S.C. § 1983, because a review of the pleadings

alone is sufficient to resolve that claim. The specific question before the court is whether the pleadings filed in this case permit the court to draw the reasonable inference that Defendant Esbri retaliated against Plaintiff for his stated political and legal activities. (*See* ECF Nos. 1, 12, 13.) The court concludes they do not.

To prevail on a claim under 42 U.S.C. § 1983 generally, a plaintiff must establish "(1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014). To further establish a prima facie claim for First Amendment retaliation, the plaintiff must allege that: "(1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [his] protected conduct." *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc)).

Defendant Esbri argues that Plaintiff has insufficiently pled both under 42 U.S.C. § 1983 and as it relates to his First Amendment retaliation claim, thereby making judgment in his favored warranted under Rule 12(c). (ECF No. 29, PageID.210–12.) With respect to § 1983 generally, Defendant Esbri argues that Plaintiff failed to allege that Defendant Esbri was acting under color of state law when he attended the August 7, 2021 ROAR meeting and that, even if Plaintiff so alleged, he cannot produce evidence to support the allegation. (Id. at PageID.210.) With respect to the retaliation claim, Defendant Esbri concedes that Plaintiff sufficiently pled engagement in protected

conduct and that adverse action was taken against him. (Id. at PageID.210–11.) However, he contests the facial sufficiency of the causation element. (Id.) Specifically, Defendant Esbri relies on *Theile v. Michigan*, 891 F.3d 240, 243 (6th Cir. 2018), and *Twombly*, 550 U.S. at 555, to argue that Plaintiff has made a conclusory allegation regarding causation that the court need not accept as true. (Id. at PageID.211.) Defendant Esbri further contends that, because Plaintiff has not pled with specificity as to how his protected activity motivated the alleged adverse action taken against him, judgment in his favor is warranted under Rule 12(c). (Id. at PageID.211–12.)

In response, Plaintiff first argues that he did sufficiently allege that Defendant Esbri was acting under the color of state law, directing the court's attention to paragraph 33 of his complaint (ECF No. 1, PageID.12.), wherein Plaintiff expressly asserts that both Defendants Esbri and Fournier "were acting in their official capacities at the time of [the] assault" based on Defendant Fournier's public statement "that he was acting in his official capacity as Mayor, and brought his ZBA Chairman with him." (ECF No. 35, PageID.356.) Plaintiff then counters that his complaint alleges sufficient facts to demonstrate that Defendants Esbri and Fournier's conspiracy to crash a private political meeting and make a scene was motivated by Plaintiff's protected conduct. (Id. at PageID.358.) He asserts that much of his protected conduct "is related to property and zoning disputes," referencing without further explanation Plaintiff's challenge to "a multimillion-dollar gift of valuable property made by the City of Royal Oak to a political contributor, the removal of parking lots around community areas, and the moving of a war memorial over the objection of the community." (Id.) As additional factual support, Plaintiff asserts that:

Further, Defendant Esbri showed up at the private citizens meeting with Defendant Fournier, who, as Mayor, pushed the majority of the challenged conduct and had previously engaged in harassment and retaliation of Plaintiff previously. (Id. at PageID.5). Defendant Fournier also admitted to being present at the meeting in his official capacity "as mayor" of Royal Oak along with Defendant Esbri, the Chairman of the Zoning Board of Appeals, to "provide facts" on the "potential zoning changes" that were challenged by the group. (Exhibit 2, Defendant Fournier / "Mayor of Royal Oak" Facebook Post). Defendant Fournier even admitted to the police that he "has had problems with Greg Stanalajczo in the past" and that he invited media to watch him crash and disrupt a private political meeting. (ECF No. 29-6, PageID.266).

(Id. at PageID.359.) Plaintiff concludes that, at this stage, he "has alleged sufficient facts to show a causal connection between Plaintiff's protected conduct and Defendant's adverse actions," and accordingly asks the court to deny Defendant Esbri's motion. (Id.)

Turning first to Defendant Esbri's argument that Plaintiff insufficiently pled facts regarding Defendant Esbri's action under color of state law, it is remarkable that both parties neglected to mention that Defendant Esbri himself admitted in his answer "that his actions were taken in his official capacity." (ECF No. 12, PageID.49.)[3] "'Factual

---

[3] For ease of reading, the court replicates the relevant allegation from the complaint and Defendant Esbri's corresponding answer:

33. Fournier and Esbri were audio and video recording the entire time and were acting in their official capacities at the time of this assault. Further, Mr. Fournier publicly stated that he was acting in his official capacity as Mayor, and brought his ZBA Chairman with him, thus both acting under color of state law, when Mr. Stanalajczo was attacked.

(ECF No. 1, PageID.12.)

33. [sic] Defendant denies that he was videorecording the incident at issue and that he assaulted Plaintiff. In an attempt to bar Defendant from a public meeting, Plaintiff both assaulted and battered Mr. Esbri putting him in fear for his own health and safety. Defendant further admits that his actions were taken in his official capacity.

(ECF No. 12, PageID.49.)

assertions in pleadings . . ., unless amended, are considered judicial admissions conclusively binding on the party who made them.'" *Kay v. Minacs Group (USA), Inc.*, 580 Fed. App'x 327, 331 (6th Cir. 2014) (quoting *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988), and citing *Barnes v. Owens–Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000)). Such assertions must be "'deliberate, clear and unambiguous' and 'expressly concede ... an alleged fact' in order to be treated as a judicial admission." *Id.* (quoting *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997)). The clarity of Defendant Esbri's affirmation here is dispositive on whether he was acting in his capacity as Chairman of the Zoning Board of Appeals on August 7, 2021. Based on his own admission, and the distinct absence of any amended answer, the court finds as a matter of law that he was.

Defendant Esbri's second argument has sharper teeth. "A critical aspect of the § 1983 . . . universe is that to be held liable, a plaintiff must demonstrate 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Robertson*, 753 F.3d at 615 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009)). With this in mind, as it relates to causation, Plaintiff must sufficiently plead that Defendant Esbri himself was motivated by Plaintiff's protected conduct to take the alleged adverse action here, that is, crashing the August 7, 2021 ROAR meeting. *See Hartman v. Moore*, 547 U.S. 250, 259–63 (2006) (comparing the requisite causation in ordinary retaliation claims, where the government agent allegedly harboring the animus is also the individual taking the alleged adverse action, with retaliatory prosecution cases). "'Usually, the question of causation is a factual issue to be resolved by a jury,

and may be satisfied by circumstantial evidence.'" *Maben v. Thelen*, 887 F.3d 252, 267 (6th Cir. 2018) (quoting *Harris v. Bornhorst*, 513 F.3d 503, 519–20 (6th Cir. 2008)).

Here, after reviewing Plaintiff's complaint, the court is left with a problematic question: what was Defendant Esbri's motivation? The pleading does not readily reveal direct or inferential allegations that would link Plaintiff's protected conduct with Defendant Esbri's actions on August 7, 2021. For instance, what connection, if any, did the Royal Oak Zoning Board of Appeals have to the transfer of the Williams Street Municipal Parking Lot? To Plaintiff's related lawsuit challenging the transfer? To the relocation of the veteran's war memorial? To the related mandamus action? While Defendant Fournier's relationship to these events is more discernable from the face of the complaint, Defendant Esbri's is not. Nor does the complaint outline a clear relationship between the Zoning Board of Appeals and, as characterized by Plaintiff, Defendant Fournier's "supermajority of the Royal Oak City Commission." (ECF No. 1, PageID.3.) Moreover, Defendant Esbri is not identified as a member of this supermajority and he is not named as one of the individuals that reportedly harassed those engaged in gathering signatures for the relocation issue petition. Instead, Plaintiff consistently alleges that "the Mayor and the City Commission" were engaged in "questionable activities," neglecting to even allege Defendant Esbri's awareness or knowledge of the same. (Id. at PageID.5.)

Only in his response to Defendant Esbri's motion does Plaintiff claim—for the first time—that his protected conduct was "related to property and zoning disputes in the City of Royal Oak." (ECF No. 35, PageID.358.) Specifically, he asserts the following:

> In addition to his vocal opposition to the improper moving of the Veteran's Memorial, Greg advocated against many proposed zoning changes. (ECF

No. 1, ¶ 2, PageID.4-9, 12-14). Greg had also vocally challenged a multimillion-dollar gift of valuable property made by the City of Royal Oak to a political contributor, the removal of parking lots around community areas, and the moving of a war memorial over the objection of the community. (Id. at PageID.3-5; Ex. 1, p. 131-132). This gifting process requires approval of the zoning commission. In his capacity as Chairperson, Esbri helped approve all of the changes that were vehemently opposed by ROAR and other citizens including Greg. (Ex. 1, p. 131- 132). In addition, the moving of the Veteran's Memorial was pushed by both Defendant Fournier and Esbri and approved by Esbri and the zoning board. (Id.; Id. at p. 39).

(ECF No. 35, PageID.350–51.) However, the court again notes that Plaintiff's complaint contains **no** reference to specific zoning changes, nor does it assert that the Zoning Board of Appeals was involved in the Williams Street Parking Lot issue—a controversy that concluded more than two years before the August 7th incident. Moreover, Plaintiff seeks to rely on his deposition testimony, which is improper for the court's review on a motion for judgment on the pleadings, wherein he is "not sure of the exact process, but there is a process you go through not only to gift it, but to approve any development that goes on it and it involves Zoning and Planning, Engineering, and the City Commission." (ECF No. 35-1, PageID.410.) Furthermore, even if the court were to consider outside information, Defendant Esbri flatly denies Zoning Board of Appeals' involvement in the veterans' memorial matter, attributing decision-making regarding relocation to the Parks and Recreation Board. (ECF No. 36-2, PageID.501.)

Plaintiff makes another, first-time allegation in his response:

Prior to August 7, 2021, Greg and Defendant Esbri had a previous run-in where Defendant Esbri attempted to silence Greg's speech. Greg was being interviewed by media personnel on local issues. Defendant Esbri interfered with the interview where he interrupted and entered the camera frame and began shouting. (Id. at p. 104-105). Additionally, Esbri was appointed to his position by Defendant Fournier and has helped approve all of the changes that Greg and ROAR were opposing. (Id. at p. 132).

(ECF No. 35, PageID.353.) Plaintiff once again tries to improperly rely on his deposition

testimony to essentially write in allegations that are otherwise entirely absent from his

complaint. Yet, his own testimony on this point is contradictory. (ECF No. 35-1,

PageID.382–83.) When first discussing being interrupted during an interview with a

news station regarding the veterans memorial, he first testified as follows:

> Q    Okay. In terms of interrupting the conversation, you said that that
>      did not happen during the City Commission meetings, but it
>      happened on some other occasion?
>
> A    Yes, in talking to a news station. I don't remember the station or
>      reporter. They were on Third Street. Again, a couple of the
>      supermajority supporters came into the background of the shot and
>      it was stopped.
>
> Q    Who were the supermajority supporters that came into the
>      background and stopped the conversation when you were speaking
>      with a reporter?
>
> A    I don't remember who they were.
>
> Q    Was Mayor Fournier there?
>
> A    I said supporters of the supermajority.
>
> Q    And the supermajority is the City Commission as a whole based on
>      your earlier testimony?
>
> A    Correct.
>
> Q    Okay. And so my question is was Mayor Fournier there when you
>      were interrupted during your conversation on Third Street with the
>      media reporter?
>
> A    No.
>
> Q    Was Mr. Esbri there?
>
> A    I don't recall.

(Id.) Plaintiff cannot have it both ways. He cannot simultaneously not recall whether

Defendant Esbri was one of the multiple people allegedly involved in disrupting his

interview and later accuse him of said action in the same deposition—all while being

unable to even remember the date or the news station with which he interviewed.

Moreover, Defendant Esbri provided documentation in the form of the Zoning Board of

Appeals' bylaws, which indicate that the City Commission appoints nine members to the board with the Chairperson being elected internally thereafter. (ECF No. 36-1, PageID.494.) Critically, however, none of these allegations and responses are part of the pleadings or sufficiently incorporated by reference, thereby making their consideration improper at this stage. *Sensations, Inc.*, 526 F.3d at 296–97. Nor does the court rely on them for purposes of deciding Defendant's motion under Rule 12(c).[4]

Plaintiff's best argument for circumstantial evidence of Defendant Esbri's causal connection is Defendant Esbri's accompaniment of Defendant Fournier to the August 7, 2021 ROAR meeting. (ECF No. 35, PageID.359.) However, even Defendant Esbri's association on August 7th "with Defendant Fournier, who, as Mayor, pushed the majority of the challenged conduct and had previously engaged in harassment and retaliation of Plaintiff previously," (id.), cannot plausibly be construed as wholesale acquiescence to every past position taken by the Mayor, let alone those which Plaintiff specifically opposed. The individualized inquiry demanded by § 1983 requires more

---

[4] To the extent that Plaintiff is attempting to amend his complaint with these new additions, the modifications are not well met, especially in light of his contradictory testimony regarding the same and Defendant Esbri's responses that include documentation. *See* FED. R. CIV. P. 16; Scheduling Order (ECF No. 17, PageID.104–05) (requiring all motions to amend the complaint to be based on reasonable cause and, if based on newly discovered information, be made promptly after receipt of the same); s*ee also Durante v. Fairlane Town Ctr.,* 201 Fed. App'x 338, 344 (6th Cir. 2006) (unpublished) (holding that despite "liberal policy with respect to amendments of defective pleadings" provided by Rule 15, plaintiff was not entitled to amend complaint to correct defects where no motion seeking to amend was filed); *Spadafore v. Gardner,* 330 F.3d 849, 853 (6th Cir.2003) (rejecting plaintiffs' claim that they were wrongfully denied an opportunity to further amend complaint to correct deficiencies where no motion for leave to amend was ever filed nor was a proposed amendment submitted in any form as required by Rule 15(a)); *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 551–52 (6th Cir. 2008) (no abuse of discretion in granted judgment on pleadings where plaintiff never sought leave to amend, despite being on clear notice that the sufficiency of her pleadings were being challenged under Rule 12(c).)

from Plaintiff at the outset of this suit. Simply alleging that "[t]here was a causal connection between the plaintiff's herein-described constitutionally protected conduct and the defendants' herein-described adverse action" is conclusory and thereby deficient. (ECF No. 1, PageID.14.) So, taking the remaining well-pled allegations in Plaintiff's complaint as true, the court finds that there is no genuine issue of material fact that Defendant Esbri's actions at the August 7, 2021 ROAR meeting were motivated by Plaintiff's political and legal activities. *See Maben*, 887 F.3d at 264. As such, Defendant Esbri is entitled to judgment on the pleadings under Rule 12(c) as it relates to Count I.

### B. Michigan State Law Claims

Still pending before the court are Plaintiff's federal claims as to Defendants Fournier and the City of Royal Oak—Counts I and V—and Plaintiff's state law claims as to Defendants Fournier and Esbri—Count II, Assault and Battery, Count III, Intentional Infliction of Emotional Distress, and Count IV, Civil Conspiracy. However, Defendant Esbri's only remaining involvement in the case is with respect to the three state claims. The parties address the viability of these claims in the context of the summary judgment portion of Defendant Esbri's motion. (ECF No. 29, PageID.217–27; ECF No. 35, PageID.368–73.) However, the court is not inclined to evaluate the substance of these arguments in light of predomination concerns. *See Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) (federal courts may raise the issue of their subject matter jurisdiction *sua sponte*).

Plaintiff's suit is brought under federal question jurisdiction, 28 U.S.C. § 1331. (ECF No. 1, PageID.3.) The only basis for Plaintiff's three state law claims is supplemental jurisdiction under 28 U.S.C. § 1367. In deciding whether to exercise

18

supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). A district court may decline to exercise supplemental jurisdiction when the state claims "substantially predominate[] over the claim or claims over which the district court has original jurisdiction," 28 U.S.C. § 1367(c)(2), "whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726–27 (1966).

The court finds *Gaines v. Blue Cross Blue Shield of Michigan*, 261 F. Supp. 2d 900 (E.D. Mich. 2003) (Gadola, J.), instructive on this issue. Having found that the action was appropriately removed to federal court because the plaintiff's breach of contract claim against the defendant was preempted by Section 301 of the Labor Management Relation Act, 29 U.S.C. §185, the court declined to exercise supplemental jurisdiction over the remaining state law claims, including a sexual harassment claim brought under Michigan's Elliott-Larsen Civil Rights Act. The *Gaines* court observed:

> Litigation in the federal courts involving federal law claims together with supplemental state law claims has caused procedural and substantive problems. Although the federal and state claims in this action appear to arise out of the same factual situation, litigating these claims together may not serve judicial economy or trial convenience.
>
> Because federal and state law each have a different focus, and because the two bodies of law have evolved at different times and in different legislative and judicial systems, in almost every case with supplemental state claims, the courts and counsel are unduly preoccupied with substantive and procedural problems in reconciling the two bodies of law and providing a fair and meaningful proceeding.

> The attempt to reconcile these two distinct bodies of law often dominates and prolongs pre-trial practice, complicates the trial, makes the jury instructions longer, confuses the jury, results in inconsistent verdicts, and causes post-trial problems with respect to judgment interest and attorney fees. Thus, it appears that in many cases the apparent judicial economy and convenience of the parties' interest in the entertainment of supplemental state claims may be offset by the problems they create.
>
> Such is the case here. Plaintiff's state law claims may substantially expand the scope of this case beyond that necessary and relevant to Plaintiff's § 301 claim, and thus the state law claims substantially predominate. Therefore, the [c]ourt declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

*Id.* at 905–06.

These well-elaborated judicial economy concerns with having parallel federal and state claims are similarly presented in this case. Here, the state assault and battery, intentional infliction of emotional distress, and civil conspiracy claims largely focus on a physical interaction between Plaintiff and Defendant Esbri. Having reviewed the available footage and pictures of the altercation, the court has serious concerns that the assault and battery claim, along with Defendant Esbri's anticipated self-defense argument, will preoccupy the jury's attention. (ECF No. 29-2, PageID.232; ECF No. 35-1, PageID.477–79; ECF No. 40-9, PageID.679.) And while the alleged assault makes up only a portion of Plaintiff's intentional infliction of emotional distress claim, there is a strong potential for jury confusion with respect to differentiating between the harms Plaintiff is alleged to have suffered, as "severe *emotional* distress" is the elementary component to proving intentional infliction of emotional distress. *See Dickerson v. Nichols*, 161 Mich. App. 103, 107–08, 409 N.W.2d 741 (1987). Moreover, even assuming that Plaintiff's claim can survive summary judgment, the time it will take to prove intentional infliction of emotional distress raises significant judicial economy

concerns, as the theories supporting such a claim well exceed the scope of a First Amendment retaliation claim. Indeed, the necessary threshold for establishing that conduct is extreme and outrageous has been described as "formidable." *Atkinson v. Farley*, 171 Mich. App. 784, 789, 431 N.W.2d 95 (1988); *Martin v. Smith*, No. 354128, 2020 WL 7310960, at *5 (Mich. Ct. App. Dec. 10, 2020).

Perhaps most concerning to the court, however, is the potential for jury confusion and predomination as it relates to Plaintiff's civil conspiracy claim. The fundamental principles underlying a conspiracy claim are wholly at odds with the strictures of § 1983, which require an individualized analysis of each defendant actor's conduct in assessing whether a constitutional violation occurred. *Robertson*, 753 F.3d at 615. Given that the court's ruling has only obviated Defendant Esbri's liability as it relates to the First Amendment retaliation claim, a jury would be forced to ignore conduct by Defendant Esbri in assessing Defendant Fournier's liability while being permitted to consider the very same in the conspiracy charge. Furthermore, exercising supplemental jurisdiction over Plaintiff's state tort claims would also extend the court's constitutionally limited authority to cover Defendant Esbri, over whom there is no longer original jurisdiction.

As such, the court finds that the interests against needlessly deciding state law issues in this instance outweighs the desire to avoid delay, increased costs, and multiplicity of litigation riddled with potential for jury confusion. *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (citing *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991)). Accordingly, it will dismiss Plaintiff's state law claims—Counts II, III, and IV—without prejudice. In so ruling, the court intentionally leaves the merits of Plaintiff's claims untouched.

## IV. CONCLUSION

For the reasons explained above, the court grants Defendant Esbri's motion to the extent that he is entitled to judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as it pertains to Count I, Plaintiff's First Amendment retaliation claim under 42 U.S.C. § 1983. Rather than address the merits of Defendant Esbri's arguments as it pertains to his alleged liability related to Plaintiff's state law claims, the court instead declines to exercise its supplemental jurisdiction over those counts. Thus, Defendant Esbri's burden of defense in this action is obviated. Remaining for the court's consideration are Counts I and V of Plaintiff's complaint, as they pertain to Defendants Fournier and the City of Royal Oak. Accordingly,

IT IS ORDERED that Defendant Esbri's "Motion for Judgment on the Pleadings & for Summary Judgment" (ECF No. 29) is GRANTED to the extent that he is entitled to judgment on the pleadings as it relates to Count I.

IT IS FURTHER ORDERED that the court declines to exercise its supplemental jurisdiction over Plaintiff's Michigan state law claims, Counts II, III, and IV, and thereby dismisses them without prejudice.

s/Robert H. Cleland                              /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  March 28, 2023

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 28, 2023, by electronic and/or ordinary mail.

s/Lisa Wagner                                      /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\EKL\Opinions & Orders\Civil\21-12422.STANALAJCZO.MotionForJudgmentOnPleadings&MSJ.EKL.RHC.docx