**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

GREG STANALAJCZO,

               Plaintiff,

v.                                        Case No. 21-cv-12422

CLYDE ESBRI, et al,

               Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS MICHAEL FOURNIER AND THE
CITY OF ROYAL OAK'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Greg Stanalajczo filed suit against Defendant Michael Fournier, Mayor of Royal Oak, and former-Defendant Clyde Esbri, Chairman of the Royal Oak Zoning Board of Appeals, foremost alleging First Amendment retaliation under 42 U.S.C. § 1983 (Count I), as well as a related *Monell* liability claim against Defendant City of Royal Oak (Count V). (ECF No. 1.) Plaintiff principally contends that, due to his political and legal activities, Defendants retaliatorily "crashed" a private meeting of concerned Royal Oak residents at which he was an attendee, recorded the same, and later manipulated the video content to smear his reputation. (Id. at PageID.14.)

At this stage in the proceedings, remaining for the court's consideration are Counts I and V of Plaintiff's complaint, as they pertain to Defendants Fournier and the City of Royal Oak.[1] Pending before the court is Defendants Michael Fournier and the

_____

[1] On March 28, 2023, the court issued an opinion and order granting former-Defendant Esbri's motion for judgment on the pleadings as it pertained to Plaintiff's First Amendment retaliation claim (Count I). (ECF No. 49.) The court further declined to exercise supplemental jurisdiction over Plaintiff's state law claims (Counts II, III, and IV)

City of Royal Oak's motion for summary judgment (ECF No. 40.) The motion has been fully briefed. (*See* ECF Nos. 40, 44, 45.) A hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For reasons explained below, the court will grant the motion.

## I.    BACKGROUND[2]

Plaintiff is a resident of Royal Oak. (ECF No. 1, PageID.2.) At the time this lawsuit was filed, Defendant Fournier and former-Defendant Esbri each held positions within Royal Oak's local government: Defendant Fournier was, and remains, the Mayor of Royal Oak and former-Defendant Esbri was the Chairman of the Royal Oak Zoning Board of Appeals. (Id.) Defendant City of Royal Oak maintains a commission-manager form of government with a Board of Commissioners comprised of the mayor and six commissioners. (ECF No. 40, PageID.516.) As mayor, Defendant Fournier has a single vote on the Board of Commissioners without any greater decision-making power. (Id.) Since Defendant Fournier's election to office in 2016, Plaintiff has been vociferously opposed to multiple actions taken by the mayoral office and Royal Oak City Commission with two standing out in particular. (Id. at PageID.3–8.)

The first concerned the alleged "gifting" of property in Royal Oak, namely the Williams Street Municipal Parking Lot, to a developer. (ECF No. 1, PageID.3–4.) Plaintiff believed that the loss of this lot to a developer would negatively impact the Royal Oak Farmers Market by causing customer and vendor parking issues. (Id. at PageID.4.) To

---

and accordingly dismissed them without prejudice, thereby obviating any burden of defense for former-Defendant Esbri in this action. (Id.)

[2] Unless otherwise noted, the material facts in this section are uncontested. Portions of the background section from the court's March 28, 2023 opinion granting former-Defendant Esbri's motion for judgment on the pleadings (ECF No. 49) have been repurposed to produce this section.

prevent the land transfer, Plaintiff "co-initiated a grass-roots community awareness initiative to Save [sic] the RO Farmers Market from future disruption to its operations." (Id.) Identified as "Sullivan Investment Group Limited Partnership" and "Third Street Properties, Inc," he further filed suit against Royal Oak in July of 2017. Ultimately, the suit was dismissed in November of 2017 for lack of standing, a decision upheld by both the Michigan Court of Appeals in July of 2018 and the Michigan Supreme Court in May of 2019. (Id.) Nonetheless, Plaintiff "spoke out regularly and strongly against this gift to the City Center developer and other issues raised in the complaint such as [a] plethora of No Bid contracts to political donors, including speaking repeatedly at City Commission meetings, other public venues and to the media." (Id.)

The second action concerned the decision to relocate the Royal Oak Veterans War Memorial. (ECF No. 1, PageID.5–8.) Plaintiff was especially motivated to oppose the relocation because he would visit the memorial, just a short walk from his office, with a now-deceased veteran family member. (Id. at PageID.5.) And he was apparently not alone in his position. Reportedly, "[v]eterans groups, grass-roots citizens collations and residents were again formed, motivated, inspired and/or mobilized to prevent Royal Oak from moving this monument, viewed by many as the equivalent of a sacred gravesite." (Id. at PageID.6.) Plaintiff specifically assisted in efforts to gather signatures to place the issue of relocating the monument on the November 2021 ballot. (Id.) However, per Plaintiff, "[o]n the very first day (on or about March 23, 2021) of the organized volunteer movement to gather signatures at the Royal Oak Farmers Market, their protected conduct to support the Veterans Memorial received retaliation by the Mayor and his supermajority's re-election campaign petition circulators." (Id.) This "retaliation" allegedly

3

included an assault and verbal harassment of an elderly military veteran and of a woman who previously ran for city commission in 2018, as well as the displacement of one signature-gathering location that Plaintiff secured allegedly due to intimidation of the onsite location manager. (Id. at 6–7.) Regardless, in May of 2021, a list of signatures was submitted to the city clerk for placement of the relocation issue on the ballot. (Id. at PageID.7.)

Thereafter, a discrepancy arose as to the legal sufficiency of the signatures. (ECF No. 1, PageID.7.) Litigation ensued. (Id.) While not a plaintiff to the action for a writ of mandamus, Plaintiff asserts that "his efforts assisting in the organization of volunteers and gathering signatures gave the plaintiffs the standing to file suit." (Id. at PageID.7–8.) At both the trial and appellate court levels, the Michigan courts ordered that the relocation issue be placed on the November 2021 ballot for voter consideration. (Id. at PageID.8.) On August 4, 2021, the Royal Oak City Commission held a special meeting to comply with the courts' rulings. (Id.) Just three days later, the event giving rise to this lawsuit occurred, portions of which were recorded. (Id. at PageID.8–9, 12.)

On August 7, 2021, a Royal Oakers for Accountability & Responsibility ("ROAR" or "RO4AR") meeting was held at the Royal Oak Detroit Elks Lodge #34. (ECF No. 1, PageID.9.) Per Plaintiff, ROAR is "an informal group of private Royal Oak residents" that meets "to provide an opportunity where citizens could feel comfortable sharing their opinions and ideas about issues within Royal Oak without fear of being threatened or intimidated." (ECF No. 44, PageID.782–83.) He has been a member since 2016, but admits that there is no "fixed membership list." (Id. at PageID.783, 776.) Plaintiff firmly maintains that the August 7th meeting "was a private meeting on a private property, only

4

open to ROAR members and pre-registered or invited guests; city officials of any kind including Mayor Fournier and Chairman Esbri were NOT welcome, were NOT invited, were NOT pre-registered, and had no reason to believe they were invited." (Id. at PageID.8; see also ECF No. 44, PageID.777–78, 784–85.) Defendants contend otherwise. (ECF No. 40, PageID.518–20.) Specifically, Defendant Fournier indicates that, based on the meeting flyer he viewed on social media, he believed the August 7th ROAR meeting was open to the public. (Id.) He also did not know ROAR was the sponsoring group. (Id.) Per Plaintiff, the group was set to "discuss[] a number of topics including what they perceived to be corrupt actions by Defendant Mayor Fournier and his supermajority." (ECF No. 1, PageID.10.) Plaintiff admits that topics of discussion as presented in the meeting flyer were matters of citizens' concern but denies that public officials were welcome to attend. (ECF No. 44, PageID.777.) It is undisputed that the flyer for the meeting contained the following language:

**OUR NEIGHBORHOODS ARE UNDER ATTACK**
THE FIGHT TO PRESERVE & ENHANCE OUR NEIGHBORHOODS

INFORMATIONAL MEETING
**Aug 7, 2021@ 10 AM**
**RO/Detroit Elks Lodge**
240 E 4th Street, Royal Oak

**Speakers:**
Local Experts –
**Tom Hallock**, former City Commissioner & Planning Commission Chairman
**Chuck Semchena**, former Oakland County Assistant Prosecutor, RO City Attorney & City Commissioner

**Learn more…**
The RO Planning Commission will be voting August 10 on the first of many harmful changes to the zoning laws, starting with the homes along the Woodward corridor & with other significant changes scheduled in the near future.

> These changes will go into effect and ultimately affect ALL neighborhoods
> (not just those along the Woodward Corridor) unless you speak out:
>
>> --Almost doubles the building heights allowed next to your home
>> (30 to 56 ft)
>> --Insufficient onsite parking requirements
>
> You will NOT receive any mailed notification from the City seeking your
> input – they are trying to sneak this by residents before we catch on.
>
> **Learn how the Mayor and Commissioners are attempting to destroy
> your single-family neighborhood & how we can fight back!**

(ECF No. 40-6; ECF No. 40, PageID.518–19; ECF No. 44, PageID.777.) It is further

undisputed that another version of the flyer distributed on social media encouraged

recipients to "invite your neighbors – share this email or this flyer" and advised, "The

Elks Lodge will be open for food service after the meeting – enjoy lunch on their patio!"

(ECF No. 40, PageID.518–19; ECF No. 44, PageID.777; ECF No. 40-7, PageID.670–

71.) No advertisement of the meeting sponsor, ROAR, was on either flyer.[3]

Defendant Fournier arranged to attend the ROAR meeting with former-Defendant

Esbri on August 2, 2021, finalizing plans on August 6th. (ECF No. 44-7, PageID.966–

67.) When Plaintiff arrived for the ROAR meeting, he observed Defendant Fournier and

former-Defendant Esbri in the Elks Lodge parking lot. Plaintiff then "rolled down his

window and advised them they were not welcome, were not ROAR members, and were

not welcome at a private meeting for ROAR members." (ECF No. 1, PageID.10.)

Defendants indicate that "the Mayor heard someone, who Mr. Esbri later identified as

Plaintiff, shout, 'no f'ing way.'" (ECF No. 40, PageID.521.) After walking into the ROAR

meeting, Plaintiff alerted those setting up to Defendant Fournier's and former-Defendant

---

[3] The bottom of the second flyer did contain the following in small print: "*Copyright ©
2021 RO4AR, All rights reserved.*" (ECF No. 40-7, PageID.671.)

Esbri's presence onsite. (ECF No. 1, PageID.11.) Undeterred, Defendant Fournier and former-Defendant Esbri approached the entrance door to the ROAR meeting. (ECF No. 1, PageID.11.) Per Defendants, "Mayor Fournier thought it was odd that an individual would yell expletives at him and turned his cell phone video recorder on in order to protect himself." (ECF No. 40, PageID.521.) However, Plaintiff points out the Defendant Fournier texted former-Defendant Esbri on August 6, 2021: "Might need to video [grimacing face emoji]." (ECF No. 44-7, PageID.967.)

Although a recording of the parties' interaction at the entrance of the ROAR meeting exists, they characterize the contact very differently. Plaintiff contends that Defendant Fournier and former-Defendant Esbri became "irate" and "more aggressive" upon being told that they would not be permitted to attend by ROAR member Erika Sykes. (ECF No. 1, PageID.11.) From inside the building, Plaintiff reportedly "observed the Mayor and Esbri engaging in what he perceived to be bullying tactics and engaging in a heated discussion with Erika Sykes at the door." (Id.) Believing the situation to be escalating, Plaintiff "stepped through the doorway between Ms. Sykes and the group to protect her, to explain to the defendants that they were not welcome in the private meeting, and to let other ROAR members gain entry through the commotion, since the meeting was about to start." (Id.) Then, per Plaintiff, the following transpired:

> As Stanalajczo was observing the exchange between Ms. Sykes and the Mayor, he felt a slight nudge on his right side as Esbri invaded his personal space. Stanalajczo spread his right leg out slightly and lifted his right forearm to create space between himself and Esbri, as the Mayor's rant continued. Stanalajczo was suddenly struck as Esbri left his feet, violently slamming Stanalajczo into the door jam and the wall. Stanalajczo was instantly dazed and had to gather himself and catch his breath. As he gathered himself, Esbri immediately started yelling about Stanalajczo touching him even though Stanalajczo had not recovered from Esbri's attack. The hostile commotion continued as Stanalajczo walked into the

> Elks to escape further injury while Fournier and Esbri continued to bully
> Ms. Sykes still attempting to illegally gain entry.

(Id. at PageID.11–12.) Plaintiff asserts that he "suffered serious injuries because of this attack, some of which have required surgical repair, long term rehabilitation treatment, and possible additional invasive and/or surgical procedures." (Id.)

In contrast, Defendants assert that, "[b]efore the Mayor and Mr. Esbri even came near the entrance to the Elks Club, a woman named Erika Sykes, who was blocking the doorway, told them, 'I'm sorry, this is a private meeting. You guys have your opportunity to talk at City Hall.'" (ECF No. 40, PageID.522.) At that point, per Defendants, "[s]everal other individuals, including Plaintiff, quickly assembled to block the doorway to the meeting," though Plaintiff maintains that these other individuals were merely seeking entry to the meeting. (Id.; ECF No. 44, PageID.779.) Defendant Fournier then indicated, ""I have a Planning Commission [meeting] coming up; I want to hear what everyone's thoughts are," to which Ms. Sykes responded, "You get to talk, you get to talk every other week." (ECF No. 40, PageID.522; ECF No. 44, PageID.780.) Shortly after this exchange, Defendants assert that "Plaintiff walked toward Mr. Esbri, lifted his right forearm[,] and pushed Mr. Esbri, knocking him off balance." (ECF No. 40, PageID.522.) Branding Plaintiff's actions as assaultive, Defendants maintain that former-Defendant Esbri "pushed Plaintiff away from him in self-defense." (Id. at PageID.523.) In response, Defendant Fournier yelled, "Hey! Guys! There will be none of this. There will be none of this." (Id.) Defendant Fournier and former-Defendant Esbri then walked away from the Elks Lodge entrance toward their vehicle in the parking lot. (ECF No. 40, PageID.524.) Plaintiff asserts they only did so upon learning the police had been called. (ECF No. 44, PageID.781.) Nonetheless, it is undisputed that Defendant Fournier did not physically

8

attempt to enter the Elks Lodge at any point. (ECF No. 40, PageID.522; ECF No. 44, PageID.780) It is further undisputed that "Mayor Fournier did not have any physical contact with Plaintiff or any other individual at the Elks Club on the date of the incident." (Id. at PageID.523; id.)

The ROAR meeting itself took place as scheduled, with guest speakers presenting information to those permitted inside the Elks Lodge. (ECF No. 40, PageID.524; ECF No. 44, PageID.781.) However, Plaintiff was not in attendance because Ms. Sykes took him to the hospital for medical treatment. (ECF No. 44, PageID.781.) A few days later, ROAR members appeared before the Royal Oak Board of Commissioners and spoke about the incident during the public comment portion of the board meeting. (ECF No. 40, PageID.524.) Still hospitalized from the injuries sustained in his confrontation with former-Defendant Esbri, Plaintiff was not part of this group. (ECF No. 44, PageID.782.) ROAR also issued a press release about the incident. (Id.; ECF No. 40, PageID.524.)

In the wake of the events on August 7th, Defendant Fournier asserts that rumors circulated on social media accusing him of assaulting Plaintiff. (ECF No. 40, PageID.525.) To dispel them, Defendant Fournier gave part his video recording of the incident to an individual with videographic experience, who then produced a slowed version of the recording with text commentary. (Id.) This edited recording was then circulated on social media. (Id.; ECF No. 44, PageID.782.)

The Royal Oak Police Department ("ROPD") responded to the Elks Lodge on the day of the incident, interviewing all parties involved and obtaining witness statements from those in attendance at the ROAR meeting. (ECF No. 40, PageID.524; ECF No. 44,

PageID.781.) ROPD later turned the matter over to the Oakland County Sheriff's Office for further investigation. (Id.; id at PageID.782.) Upon review, the Oakland County Prosecutor's Office declined to issue charges against either Plaintiff or former-Defendant Esbri, determining that they were "mutual combatants." (Id.; ECF No. 44-12, PageID.1023.) Defendant Fournier did not initially disclose to law enforcement that he recorded the parties' interaction. (ECF No. 45, PageID.1032.) Per the report of the Oakland County Sheriff Officer in Charge, Shawn Werner, Defendant Fournier "said that he has had problems with Greg Stanalajczo in the past . . . [and] that when he observed Stanalajczo, is when [sic] he felt he should record from his phone." (ECF No. 44-12, PageID.1023.) When pressed as to why he failed to disclose the video's existence, Defendant Fournier "advised that he was nervous about the incident because of his position as Mayor . . . [and] that he was cautious about releasing the video to anyone and consulted a lawyer first." (Id.)

Roughly two months later, on October 13, 2021, Plaintiff filed the instant lawsuit. He asserted five claims: Count I, "Violation of Civil Rights Under 42 U.S.C. § 1983 (First Amendment – Retaliation for Protected Conduct)," against all Defendants; Count II, "Violation of MI State Law (Assault and Battery)," against former-Defendant Esbri; Count III, "Violation of MI State Law (Intentional Infliction of Emotional Distress)," against former-Defendant Esbri and Defendant Fournier; Count IV, "Violation of MI State Law (Civil Conspiracy)," against former-Defendant Esbri and Defendant Fournier; and Count V, "*Monell* Liability Against Royal Oak." (*See* ECF No. 1.) Only Counts I and V remain. (*See* ECF No. 49.) As it relates to Count I, Plaintiff's Complaint cites the following as constitutionally protected conduct:

a. Being a plaintiff in an action against Fournier and Royal Oak in which he attempted, through court action, to prevent Royal Oak from gifting a multi-million-dollar property to a developer and political contributor;

b. Being an outspoken critic of Fournier and Royal Oak's decision to gift a multi-million-dollar property [to] same favored developer, including speaking out against it during the public comment portion of City Commission meetings;

[c.] Coordinating locations and gathering petition signatures to prevent Fournier and Royal Oak from unilaterally[,] and without voter input, move the veterans war memorial; [and]

d. Working with the plaintiffs in a lawsuit to successfully prevent Fournier and Royal Oak from unilaterally moving a war memorial monument without first having it put on the ballot for the voters to decide[.]

(Id. at PageID.13–14.) He argues that, as direct retaliation for the aforementioned, "Defendant Fournier and Esbri conspired to punish Mr. Stanalajczo by crashing the August 7, 2021 ROAR meeting that they knew Mr. Stanalajczo's would be attending with video cameras on, specifically to create content to manipulate and then publish, specifically to smear and slander Mr. Stanalajczo and others at the meeting." (Id. at PageID.14.) Without elaborating, Plaintiff states that "[t]here was a causal connection between the plaintiff's herein-described constitutionally protected conduct and the defendants' herein-described adverse action." (Id.) As a result, Plaintiff claims the following suffered harm: the publishing of only a portion of the video taken on August 7, 2021 to smear and slander him; bodily injury from Defendant Esbri's alleged assault; and the post-incident hiring of a private investigator by Defendant Fournier to dig up dirt on Plaintiff. (Id. at PageID.14–15.)

## II.  STANDARD

Summary judgment is appropriate when no dispute of material fact exists and the moving party demonstrates entitlement to judgment as a matter of law. FED. R. CIV. P.

11

56(a). In evaluating a motion for summary judgment, the court considers all evidence, and all reasonable inferences flowing therefrom, in the light most favorable to the nonmoving party. *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). The court may not make credibility determinations or weigh the evidence presented in support or opposition to a motion for summary judgment—only the finder of fact can make such determinations. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

The movant has the initial burden of showing the absence of a genuine dispute as to any material fact, that is, "an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). The burden then shifts to the nonmoving party to set forth enough admissible evidence to raise a genuine issue of material fact for trial. *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017). Not all factual disputes are material. A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim "and would affect the application of the governing law to the rights of the parties." *Rachells v. Cingular Wireless Emp. Servs., LLC*, 732 F.3d 652, 660 (6th Cir. 2013).

## III. DISCUSSION

### A. First Amendment Retaliation Claim

#### 1. Parties' Arguments

Defendants rely on *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012), to chiefly argue that Plaintiff cannot establish a First Amendment retaliation claim

because no sufficiently adverse action was taken against him by Defendant Fournier. (ECF No. 40, PageID.527.) They assert that Plaintiff cannot articulate any injury from Defendant Fournier's less than two-minute attempt to attend a publicly noticed meeting. (Id. at PageID.529–30.) They further assert that "Plaintiff may well be embarrassed by his actions on the date of the incident, but the fact that an accurate video of Plaintiff's conduct appeared on social media is not an adverse action as required to establish a First Amendment Retaliation claim." (Id. at PageID.531.) Defendants additionally point out that Plaintiff has produced no evidence that anyone hired a private investigator to follow him after the incident, calling the accusation "baseless," as Plaintiff himself admitted during his deposition that he heard such a rumor prior to August 7, 2021. (Id. at PageID.531–32.)

Defendants alternatively argue that, "even if Plaintiff could establish sufficient adverse action on the part of the Mayor, it would not, and did not, deter a person of ordinary firmness from engaging in protected conduct." (ECF No. 40, PageID.532.)  As support, Defendants point to the undisputed fact that the August 7th ROAR meeting proceeded in its entirety as scheduled with Plaintiff's non-participation solely due to his need for medical attention and not because of fear of Defendant Fournier. (Id.) They further highlight the attendance of several ROAR members at the Royal Oak Board of Commissioners meeting a few days later, at which public commentary was made regarding the August 7th incident by group members, and ROAR's press release regarding the same. (Id. at PageID.532–33.)

Defendants also attack the causation element of Plaintiff's retaliation claim, arguing that Plaintiff cannot show that Defendant Fournier's allegedly adverse action

was motivated, substantially or otherwise, by Plaintiff's protected conduct. (ECF No. 40, PageID.533–37.) Defendants contend that "Plaintiff has made no showing that Mayor Fournier had any knowledge prior to August 7, 2021 that Plaintiff was associated with any of the conduct he claims is constitutionally-protected," stressing that Plaintiff was not a named party in any litigation concerning the transfer of city property or the War Memorial relocation.  (Id. at PageID.534–35.) Defendants further contend that "Plaintiff has not demonstrated that the Mayor was aware that Plaintiff was an 'outspoken critic' of him," pointing out that, per his deposition testimony, "[t]he Mayor does not recall having any direct contact with Plaintiff prior to August 7, 2021." (Id. at PageID.535.) Additionally, Defendants assert that Plaintiff has no evidence demonstrating Defendant Fournier's knowledge of his involvement in coordinating signatures for the War Memorial relocation issue, reminding the court of Plaintiff's admissions regarding not seeing Defendant Fournier at any of the signature-gathering events. (Id.) Defendants also assert that Plaintiff can produce no evidence showing that Defendant Fournier knew he would attend the August 7, 2021 ROAR meeting, which unravels his allegation that Defendant Fournier and former-Defendant Esbri's attendance was meant to "punish" Plaintiff. (Id. at PageID.536.) Conversely, Defendants assert that Defendant Fournier would have gone to the meeting regardless of Plaintiff's protected conduct because the evidence shows that his attendance was sparked by seeing the meeting flyer. (Id. at PageID.537.)

Finally, Defendants also make arguments related to Defendant Fournier's First Amendment rights and to his entitlement to qualified immunity. (ECF No. 40, PageID.538–42.) They argue that "Plaintiff should not be permitted to infringe upon the

Mayor's rights by instituting litigation against him for simply attempting to attend a publicly advertised meeting to discuss what Plaintiff admits were matters of public concern." (Id. at PageID.538.) They alternatively contend that qualified immunity insulates Defendant Fournier from liability because, as argued already, Plaintiff cannot establish a violation of any of his constitutional rights and, "[e]ven if it could be argued that some constitutional violation was committed by the Mayor, no reasonable individual would have understood that his conduct violated any of Plaintiff's clearly established rights." (Id. at PageID.541–42.)

In response, Plaintiff asserts that numerous issues of material fact remain for resolution by a finder of fact, thereby necessitating denial of Defendants' motion. (ECF No. 44, PageID.765.) Addressing Defendants' argument that Defendant Fournier's conduct was not sufficiently adverse to support a First Amendment retaliation claim, Plaintiff relies on *Miller v. City of Cincinnati*, 622 F.3d 524, 537 (6th Cir. 2010), to argue that "Defendant Fournier's mere presence at the RO4AR meeting was enough to violate Plaintiff and the other RO4AR members' First Amendment right to free speech and free association." (Id. at PageID.793.) Noting that Defendant Fournier and former-Defendant Esbri were twice told they were not welcome at the ROAR meeting, once by Plaintiff in the parking lot and again by Ms. Sykes at the Elks Lodge entrance, Plaintiff contends that "[Defendant] Fournier's forced inclusion at the meeting ultimately prevented Plaintiff from being able to participate or voice his opinion in any way, as he suffered serious injury that necessitated immediate medical care." (Id. at PageID.793–94.) He further contends that, "where the Mayor of a municipality shows up at a meeting he knows to be organized by his critics, refuses to leave that private meeting on request, and brings

an associate who then assaults and hospitalizes an attendee of that meeting, it is unquestionably reasonable to conclude that a person of ordinary firmness would be dissuaded from engaging in similar political speech in the future." (Id. at PageID.794.)

Addressing next Defendants' attack on the causation component of his retaliation claim, Plaintiff argues that "mere denial of retaliatory intent is insufficient to permit a defendant to prevail on summary judgment." (ECF No. 44, PageID.797.) Rather, relying on *Paige v. Coyner*, 614 F.3d 273 (6th Cir. 2010) as illustrative, Plaintiff presents the following as circumstantial evidence of Defendant Fournier's retaliatory intent: "[b]efore he showed up to the RO4AR meeting, Defendant Fournier sought to make a spectacle of the event by attempting to have press at the event with him;" Defendant Fournier knew of Plaintiff and his constitutionally protected criticisms of Defendants, as he admitted to recalling Plaintiff's emails critical of the Planning Commission and public comments at several city meetings; "[b]efore they attempted to disrupt the RO4AR meeting with their presence, Defendants Fournier and Esbri exchanged text messages in which they discussed recording the event;" Defendant Fournier's attempt to "obfuscate his intent behind recording the meeting" by giving deposition testimony that is inconsistent with his  testimony; Defendant Fournier "surreptitiously" recorded the video of the incident by having his phone in his pocket and did not immediately disclose the video to ROPD; Defendant further covered up his role in recording and disseminating the video by giving it to a third party for alteration and publication; and lastly, Defendant Fournier was "nervous" about posting the video himself to social media.  (Id. at PageID.798–801.)

Finally, Plaintiff counters that Defendant Fournier is not entitled to qualified immunity. (ECF No. 44, PageID.801–05.) He asserts that "[c]ommon sense alone indicates Defendant Fournier should have known that he was not permitted to attend the RO4AR meeting; he was repeatedly told exactly that." (Id. at PageID.803.) He further argues that *Miller v. City of Cincinnati*, 622 F.3d 524 (6th Cir. 2010), established well before August 7, 2021 that citizens have the right to assemble without forced governmental intrusion. (Id.) As such, per Plaintiff, "[w]hen one adds First Amendment jurisprudence to the equation, it becomes clear that Defendant Fournier's persistence in attempting to gain entry to the meeting runs afoul of Mr. Stanalajczo's clearly established constitutional rights." (Id.)

Much of Defendants' reply rehashes arguments already advanced in their initial motion. However, they do counter that Plaintiff's reliance on *Miller v. City of Cincinnati*, 622 F.3d 524 (6th Cir. 2010), is misplaced because that case dealt specifically with a First Amendment expressive association claim by a *group*—not, as here, a retaliation claim by an *individual*. (ECF No. 45, PageID.1028.) Defendants correctly point out that Plaintiff lacks standing to bring a claim on behalf of the group ROAR and that he has not pled an expressive association claim. (Id. at PageID.1029.) Moreover, Defendants assert that, unlike the facts in *Miller*, Defendant Fournier did not force his inclusion in the August 7th ROAR meeting. (Id.) Instead, Defendants reiterate that, as the video reflects, Defendant Fournier "was present *outside of the meeting and prior to it even commencing* for less than 2 minutes before voluntarily leaving the exterior of the Elks Club." (Id.) As such, they contend that Plaintiff has not produced evidence of a sufficiently adverse action. (Id. at 1030.) Likewise, because the type of First Amendment

17

claim and facts set forth in *Miller* are significantly different from the case at bar,

Defendants argue that the case did not place Defendant Fournier on notice that

attempting to attend a publicly noticed meeting of citizens would violate Plaintiff's clearly

established First Amendment rights. (Id. at PageID.1032–33.) As such, Defendants

contend that Plaintiff's qualified immunity counterargument fails. (Id.)

## 2. Analysis

To prevail on a claim under 42 U.S.C. § 1983 generally, a plaintiff must establish

"(1) that he or she was deprived of a right secured by the Constitution or laws of the

United States; and (2) that the deprivation was caused by a person acting under color of

law." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014). To further establish a

prima facie claim for First Amendment retaliation within the framework of § 1983, the

plaintiff must demonstrate that: "(1) [he] engaged in protected conduct; (2) an adverse

action was taken against [him] that would deter a person of ordinary firmness from

continuing to engage in that conduct; and (3) there is a causal connection between

elements one and two—that is, the adverse action was motivated at least in part by [his]

protected conduct." *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting

*Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc)).

The court is foremost concerned with the alleged adverse action taken by

Defendant Fournier against Plaintiff.[4] With respect to establishing an adverse action, the

Sixth Circuit instructs as follows:

---

[4] Because Defendants make no effort to argue otherwise, the court assumes without
deciding that Plaintiff engaged in constitutionally protected conduct when: "he
attempted, through court action, to prevent Royal Oak from gifting a multi-million-dollar
property to a developer and political contributor;" outspokenly criticized Defendants'
decision to gift said property at City Commission meetings; coordinated signature-

> "The term 'adverse action' arose in the employment context and has
> traditionally referred to actions such as 'discharge, demotions, refusal to
> [hire], nonrenewal of contracts, and failure to promote.'" *Fritz v. Charter
> Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010) (quoting *Thaddeus–
> X*, 175 F.3d at 396). In the First Amendment context, however, we have
> held that "any action that would deter a person of ordinary firmness from
> exercising protected conduct will [constitute a sufficient adverse action],
> which may include harassment or publicizing facts damaging to a person's
> reputation." *Id.* Whether an alleged adverse action is sufficient to deter a
> person of ordinary firmness is generally a question of fact. *Bell v.
> Johnson*, 308 F.3d 594, 603 (6th Cir.2002). Nevertheless, when a
> plaintiff's alleged adverse action is "inconsequential," resulting in nothing
> more than a "de minimis injury," the claim is properly dismissed as a
> matter of law. *Id.* at 603, 606. Indeed, it "trivialize[s] the First Amendment
> to allow plaintiffs to bring ... claims for *any* adverse action[,] no matter how
> minor." *Id.* at 603 (internal quotation marks and citation omitted)
> (emphasis in original).

*Wurzelbacher*, 675 F.3d at 583–84. The Sixth Circuit further indicates:

> Like the definition of protected conduct, however, the definition of adverse
> action is not static across contexts. Prisoners may be required to tolerate
> more than public employees, who may be required to tolerate more than
> average citizens, before an action taken against them is considered
> adverse. The benefits of such a standard are that it is an objective inquiry,
> capable of being tailored to the different circumstances in which retaliation
> claims arise, and capable of screening the most trivial of actions from
> constitutional cognizance. We emphasize that while certain threats or
> deprivations are so de minimis that they do not rise to the level of being
> constitutional violations, this threshold is intended to weed out only
> inconsequential actions, and is not a means whereby solely egregious
> retaliatory acts are allowed to proceed past summary judgment.

*Thaddeus-X*, 175 F.3d at 398.

The question before the court then is whether a person of ordinary firmness

would be deterred from publicly criticizing a government official and from engaging in

counter-political and -legal activity to said official's agenda by the official's attempt to

---

gathering for a voter referendum related to the War Memorial relocation; and worked
with the plaintiffs who brought the subsequent lawsuit regarding voter input on the
relocation. (*See* ECF No. 1, PageID.13–14.)

attend a meeting of citizens opposed to the official's agenda at which the person is also present. Put differently, could a reasonable jury conclude that Defendant Fournier's attempt to attend the August 7, 2021 ROAR meeting regarding zoning issues after Plaintiff's criticisms of Defendant Fournier's part in handling of other non-zoning issues would deter a person of ordinary firmness from future criticism and counter-activism? Under the facts and circumstances of this case, the court finds it could not.

A reasonable jury could plausibly find that Defendant Fournier and Plaintiff knew of each other and that Defendant Fournier was aware generally of Plaintiff's adverse position to several issues within the Defendant City of Royal Oak during his mayoral term. Defendant Fournier admitted as much to Deputy Werner during his August 18, 2021 interview with the Oakland County Sheriff's Office when referencing past "problems" with Plaintiff (ECF No. 44-12, PageID.1022) and in his social media post regarding the incident where he describes Plaintiff as "a resident with a history of making abusive and threatening statements to the city commission and staff" (ECF No. 44-13, PageID.1025). However, it would be hard-pressed to find Defendant Fournier's attempted attendance at the August 7th ROAR meeting an adverse action against Plaintiff individually. In arguing otherwise, specifically that Defendant Fournier's mere presence outside the Elks Lodge constituted a sufficiently adverse action, Plaintiff mistakenly relies on *Miller v. City of Cincinnati*, 622 F.3d 524 (6th Cir. 2010).

*Miller* concerned a First Amendment expressive association claim challenging the City of Cincinnati's requirement that a group obtain a "City sponsor" or collaborate with certain city officials to hold an event inside city hall. 622 F.3d at 529–30. The decision involved discussion of the public forum doctrine, government speech, and

whether a regulation requiring collaboration with city officials unconstitutionally forced

groups to accept members they did not desire. *Id.* at 533–38. In reviewing the district

court's decision that the plaintiff-groups were entitled to injunctive relief, the Sixth Circuit

found that:

> The First Amendment extends beyond the right to speak to encompass
> the "right of expressive association," *i.e.,* the "right to associate for the
> purpose of speaking." *Rumsfeld v. Forum for Academic & Institutional
> Rights, Inc.*, 547 U.S. 47, 68, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006).
> The right protects "a group's membership decisions" and also protects
> against laws that make "group membership less attractive" without
> "directly interfer[ing] with an organization's composition," such as requiring
> groups to disclose their membership lists or imposing penalties "based on
> membership in a disfavored group." *Id.* at 69, 126 S.Ct. 1297 (citing *Brown
> v. Socialist Workers '74 Campaign Comm.* (*Ohio*), 459 U.S. 87, 101–02,
> 103 S.Ct. 416, 74 L.Ed.2d 250 (1982); *Healy v. James*, 408 U.S. 169,
> 180–84, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972)). "The forced inclusion of
> an unwanted person in a group infringes the group's freedom of
> expressive association if the presence of that person affects in a
> significant way the group's ability to advocate public or private
> viewpoints." *Boy Scouts of America v. Dale*, 530 U.S. 640, 648, 120 S.Ct.
> 2446, 147 L.Ed.2d 554 (2000) . . .
>
> A government action does not interfere with the right of expressive
> association unless it directly or indirectly interferes with group
> membership. In *Forum for Academic & Institutional Rights*, the Supreme
> Court held that requiring law schools to allow military recruiters on campus
> as a condition of receiving federal funds did not significantly burden
> associational rights because "[r]ecruiters are, by definition, outsiders who
> come onto campus for the limited purpose of trying to hire students." 547
> U.S. at 69, 126 S.Ct. 1297. The statute at issue, therefore, did not "force a
> law school 'to accept members it does not desire.' " *Id.* The right of
> expressive association does not shield groups from mere "interaction" with
> non-members, and a group cannot invoke it simply by claiming interaction
> "would impair its message." *Id.* (quoting *Dale*, 530 U.S. at 653, 120 S.Ct.
> 2446).
>
> In this case, the plaintiffs' expressive association claim fails because
> nothing in Administrative Regulation # 5 affects the internal membership
> decisions of groups seeking to use city hall for expressive activities.
> Officials who "sponsor" or "collaborate" with groups to use the interior
> spaces do not become members of the group—they are outsiders with
> whom groups must interact only for the limited purpose of accessing the
> city hall space.

*Id.* at 537–38.

Plaintiff has not alleged an expressive association violation claim. (*See* ECF No. 1.) Moreover, expressive association claims and retaliation claims involve entirely different factor-analyses and considerations. As such, Plaintiff cannot rely on *Miller* for the proposition that Defendant Fournier took an adverse action against him by merely appearing at the site for the ROAR meeting. Additionally, though Plaintiff firmly maintains that the meeting was only open to non-government-official citizens of Royal Oak, the event flyer undisputedly did not indicate as much. (*See* ECF No. 40-6.) Further, while the plain language of the flyer suggests some hostility towards the mayor and commissioners' proposed zoning changes, such opposition cannot be construed as advertisement of a private event. At best, as Defendant Fournier admits, current Royal Oak government officials upon reviewing the flyer would know only that those in attendance would likely have differing viewpoints. (ECF No. 40-2, PageID.576–79.) But Plaintiff cites no case law in support of his argument that a government official is not allowed to attend a facially open meeting of private citizens with differing viewpoints. And perhaps unsurprisingly, as such a proposition is antithetical to the spirit of democratic debate cherished in the United States.

Nor can Plaintiff alternatively argue that Defendant Fournier's refusal to immediately leave the Elks Lodge premises upon request constitutes an adverse action. The court has reviewed all video representations of the incident submitted by the parties. (ECF Nos. 40-9, 40-16, 45-1.) Defendant Fournier and former-Defendant Esbri interacted with ROAR members for a matter of minutes. (Id.) Plaintiff makes no allegation that the meeting itself was delayed and indeed admits that the programming

went forward in its entirety as scheduled, making any hypothetical delay inconsequential. (ECF No. 40, PageID.524; ECF No. 44, PageID.781.) Furthermore, Plaintiff cannot attribute his physical altercation with former-Defendant Esbri to Defendant Fournier. As this court has indicated previously, "[a] critical aspect of the § 1983 . . . universe is that to be held liable, a plaintiff must demonstrate 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Robertson*, 753 F.3d at 615 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Even if Plaintiff's unfortunate physical injuries from the day could somehow be construed as an adverse action, as Plaintiff admits, Defendant Fournier was not his aggressor. (ECF No. 40, PageID.523; ECF No. 44, PageID.780.)

Thus, as a matter of law, the court finds that Plaintiff has failed to present sufficient evidence of an adverse action taken by Defendant Fournier that would deter or chill a person of ordinary firmness from engaging in critical political activity.[5] Defendant Fournier's short-lived attempt to attend the ROAR meeting was inconsequential. *Thaddeus-X*, 175 F.3d at 398; *Wurzelbacher*, 675 F.3d at 583–84. To hold otherwise would trivialize the First Amendment, *id.*, and potentially chill political debate within the Royal Oak community. Summary judgment in Defendants' favor on Count I is therefore warranted due to insufficient proof of a genuine issue of fact as to the existence of an adverse action. Because this defect alone supports an award of summary judgement, the court will not analyze Defendants' other arguments.

---

[5] This is underscored by the fact that the ROAR meeting went on as scheduled with no allegations that participants left as a result of Defendant Fournier's presence at the Elks Lodge and that some present at the meeting went on to publicly comment about what transpired at a City Commission meeting just days later. (ECF No. 40, PageID.524; ECF No. 44, PageID.781.)

### B. *Monell* Liability

The only claim remaining for the court's consideration is Count V, Plaintiff's *Monell* liability claim against Defendant City of Royal Oak. However, "[t]o succeed on a municipal liability claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the municipality was the 'moving force' behind the deprivation of the plaintiff's rights." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (citing *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 606–07 (6th Cir. 2007)). For the reasons already set forth above, the court found as a matter of law that Plaintiff failed to establish a First Amendment retaliation claim. Without the predicate constitutional violation, municipal liability cannot attach. As such, the court need not belabor itself with further analysis before granting Defendants summary judgment on Count V as well.

### IV.   CONCLUSION

Accordingly, IT IS ORDERED that Defendants Fournier and the City of Royal Oak's "Motion for Summary Judgment" (ECF No. 40) is GRANTED.

s/Robert H. Cleland                          /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  July 25, 2023

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 25, 2023, by electronic and/or ordinary mail.

s/Kim Grimes                                  /
Deputy Clerk

S:\Cleland\Cleland\EKL\Opinions & Orders\Civil\21-12422.STANALAJCZO.MSJ.EKL.docx